# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JLG INDUSTRIES, INC.

                Plaintiff,

     v.

LINGONG GROUP JINAN
HEAVY MACHINERY CO., LTD;
LGMG NORTH AMERICA INC.;
and NATIONAL TRUCK BODY
SOLUTIONS, INC.,

            Defendants.

CASE NO. _____

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT

Plaintiff, JLG Industries, Inc. ("JLG"), files this Verified Complaint against

Defendants Lingong Group Jinan Heavy Machinery Co., Ltd. ("LGMG China"),

LGMG North America Inc. ("LGMG USA"), and National Truck Body Solutions,

Inc. ("NTB") (collectively "Defendants") and in support thereof alleges as follows:

## NATURE AND BASIS OF ACTION

1.    This is an action for trademark infringement in violation of Sections

32(1) and 43(a) of the federal Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a); unfair

competition in violation of the common law of Pennsylvania; and trademark dilution

in violation of the Georgia Trademark Dilution Statute, O.C.G.A. § 10-1-451(b).

JLG seeks temporary, preliminary, and permanent injunctive relief, actual damages, statutory damages for trademark counterfeiting, an accounting of Defendants' profits, and recovery of JLG's reasonable costs and attorneys' fees.

## THE PARTIES

2.      JLG is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 1 JLG Drive, McConnellsburg, PA  17233.

3.      JLG is one of the country's leading manufacturers of aerial work platforms, including scissor lifts, boom lifts, vertical lifts, and telehandlers.  JLG's products are uniquely identified in the marketplace by a distinctive orange and cream color scheme JLG has used on its products for more than 25 years.

4.      LGMG China is a Chinese limited liability company with its principal place of business at High-tech Zone, Jinan City, Shandong Province Kejia Road 2676, Jinan, Shandong; Postal Code: 250104.  LGMG China is a manufacturer of aerial work platforms, including scissor lifts and boom lifts, and has recently begun shipping its products to the United States using JLG's orange and cream color scheme without JLG's authorization or consent.

5.      LGMG USA is a Pennsylvania corporation with its principal place of business at 1445 Sheffler Drive, Chambersburg, PA  17201.  On information and

belief, LGMG USA is a subsidiary of LGMG China formed to market, sell and service LGMG China's aerial work platforms in the United States.

6.     NTB is a Pennsylvania corporation with its principal place of business at 10373 Antrim Church Road, Greencastle, PA 17225. NTB is a distributor of new and used trucks, including wreckers, truck mounted cranes, and dump trucks, and recently imported more than 200 aerial work platforms from LGMG China.

## JURISDICTION

7.     This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337 and 1338. This Court has jurisdiction over JLG's state law causes of action pursuant to 28 U.S.C. § 1367(a) and the doctrine of supplemental jurisdiction.

8.     This Court has personal jurisdiction over LGMG USA and NTB because they are incorporated under the laws of the Commonwealth of Pennsylvania and their principal places of business are located within this judicial district.

9.     This Court has personal jurisdiction over LGMG China because this action arises from LGMG China's transaction of business and commission of tortious acts within this judicial district.

## VENUE

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (1) the principal places of business of LGMG USA and NTB are located within this judicial district; (2) LGMG China, as a foreign company, is subject to venue in any judicial district; (3) a substantial part of the events or omissions giving rise to the claims against the Defendants occurred in this district; and (4) all Defendants are subject to personal jurisdiction within this district.

## FACTUAL BACKGROUND

### JLG and Its Aerial Work Platform Products

11.     JLG is the leading global designer and manufacturer of aerial work platforms and telehandlers.

12.     JLG started the aerial work platform industry with the introduction of the world's first boom lift in 1969.

13.     The company's product portfolio has since expanded to include a variety of award-winning hydraulic and electric drive scissor lifts, telescopic handlers, vertical lifts, and low-level access solutions.

14.     In addition to launching the aerial work platform industry, JLG has claimed many other industry firsts — including the first oscillating axles for boom and scissor lifts in 1981, the first fuel-cell powered hydraulic boom lift in 1999, the

first environmentally-friendly 60-foot electric boom lift in 2000, and the first straight boom lift to reach 150 feet in 2011.

15.     In 2014, the company surpassed its own height record with the introduction of a 185-foot boom lift, the world's tallest self-propelled boom lift, and, in the same year, JLG introduced the first true construction hybrid diesel/electric boom lift.

16.     Today, JLG employs approximately 6,000 employees across five continents, with manufacturing facilities in the United States, France, the United Kingdom, Romania, Australia, and China, but with its roots and headquarters where the company began in McConnellsburg, Pennsylvania.   Its worldwide business operations generate more than $3.7 billion in revenue annually.

17.     JLG sells 64 models of boom lifts and 26 models of scissor lifts in the United States to serve nearly every conceivable end user need, whether indoor or outdoor, and whether on smooth surface or rough terrain jobsites.

18.     JLG's products have received numerous awards for quality, innovation, and durability, including the following:

  •     EquipmentWatch, a world leader in heavy equipment data and intelligence, awarded its Highest Retained Value Award to JLG's engine-powered

scissor lifts each of the past two years.   Retained value is one of the primary indicators of overall performance and reliability for heavy equipment.

- In 2018, *Construction Equipment* magazine awarded JLG's LRT series scissor lifts a "Top 100 New Products" award.  These awards are the longest running awards program of its kind in the construction industry.

- JLG's X770AJ Compact Crawler Boom was a category winner in the construction equipment category of *Electrical Construction & Maintenance* magazine's 2017 Product of the Year competition, and *Equipment Today* magazine named the crawler to its Contractors' Top 50 New Products list.

- In 2016, *Rental* magazine awarded JLG's 1850SJ boom lift its Editor's Choice Award.

- In 2013, *Lift and Access* magazine awarded its Leadership in Lifting Equipment and Aerial Platforms Award to JLG for its RS Series electric scissor lifts.

19.   JLG's aerial work platforms have been used on some of the most high profile construction and maintenance projects in the United States, including repair work on the White House, construction of the new World Trade Center transportation hub, construction of a 72,000 square foot temporary concert venue for the 2019 Super Bowl, construction of the Times Square New Year's Eve celebration

in New York City, repairs on the USS Constellation in Baltimore's Inner Harbor, construction of the full-size wooden Noah's Ark at Ark Adventure in Kentucky, and construction of the Colorado State University football stadium. True and correct images of these projects are attached as Exhibit 1.

20.     According to EquipmentWatch, JLG products account for 50.1% of all boom lift sales and 26.3% of all engine powered scissor lift sales. See true and correct printouts from EquipmentWatch.com attached as Exhibit 2.

21.     The majority of JLG's customers in the United States are rental companies that rent JLG's products to construction companies, retail distribution centers, electric and gas companies, movie studios, small businesses and individuals for use in connection with a wide range of projects, including construction, interior and exterior maintenance, movie production, stock picking, and a host of other uses.

22.     JLG's products have long been recognized for their high quality, dependability, and safety among purchasers and end users; accordingly, rental demand for JLG's products is high.

### JLG's Famous Orange and Cream Color Trademark

23.     Since at least as early as 1988, JLG has continuously and exclusively used in commerce in the United States a distinctive orange and cream color scheme to identify its aerial work platforms and distinguish them from the competition.

24.    Orange is used on the base, arms and platform baskets of JLG's lifts, and cream is used on boom and scissor arms.   Representative images of JLG lifts bearing the JLG colors are set forth below:



25.    The orange and cream color scheme is the most dominant branding on JLG's products and can be seen and recognized well beyond the range at which any other branding on the products can be seen.

26.    The orange and cream color scheme JLG selected for its products serves no function other than as branding to identify products made by JLG, as demonstrated by the fact that Genie's work platforms are blue and gray, Skyjack's

are dark orange and dark gray, Haulotte's are yellow and black, and MEC's are red and white.  *See* Exhibit 3 attached, which are true and correct printouts from these manufacturers' websites.

27.    Since JLG's first adoption and use of the orange and cream color scheme, JLG has been the only manufacturer to use the color scheme in connection with aerial work platforms in the United States.

28.    JLG has engaged in substantial advertising and promotional efforts over the years to advertise and promote its products bearing the orange and cream color scheme.  These efforts have included (a) the publication of a wide variety of promotional brochures and literature regarding the company and its products; (b) print advertising in the industry's leading magazines, including *Lift & Access*, *Equipment Today*, *Engineering News Record*, *Rental*, *Facilities Maintenance Decisions,* and the *American Rental Association* magazine; and (c) sponsorship of and attendance at the industry's most important trade shows, including ConExpo, the American Rental Association, the World of Concrete, Traction Conference, the National Facilities Management & Technology Conference, and National Safety Council Congress & Expo.

29.    True and correct examples of JLG's promotional literature are attached as Exhibit 4, true and correct examples of JLG advertising and promotional materials

are attached as Exhibit 5, and true and correct images of JLG outdoor advertising and booths at representative trade shows are attached as Exhibit 6.

30. For years, JLG's marketing efforts have also included (a) the operation of a heavily trafficked website at <www.jlg.com> that includes detailed information regarding the company and each of its products; (b) advertisements on third-party industry websites and in third-party digital e-newsletters, including the websites Lift & Access, Equipment Today, Rental, Construction Business Owner, and Construction Equipment, and the e-newsletters Equipment World Daily, Lift & Access, Access Lift & Handlers, and Facilities Maintenance Decisions; and (c) the operation of active social media pages on Facebook, LinkedIn, Twitter and YouTube (where JLG has posted numerous videos regarding the company and its products).

31. True and correct printouts of pages from the JLG website are attached as Exhibit 7; true and correct copies of JLG Internet advertising is attached as Exhibit 8; and true and correct printouts from JLG's social media pages are attached as Exhibit 9.

32. Over the past five years, JLG's website has received more than 6 million hits from more than 3.2 million unique visitors from the United States alone.

33.    Websites, trade shows, and magazines are the most important resources customers in the United States use to inform themselves regarding the purchase or rental of aerial work platforms.

34.    JLG has spent more than $44 million in advertising and promoting its products featuring the color scheme in the past six years alone.

35.    JLG's products featuring its orange and cream color scheme have received significant publicity throughout the United States in both important industry publications and publications targeted to the general public.   True and correct examples are attached as Exhibit 10.

36.    JLG's products have also received attention in popular culture.   For example, a JLG scissor lift was featured in the movie *Casino Royale* in a scene in which James Bond rode the lift to the ground while chasing a suspect on a construction site.   A true and correct still image from the movie is set forth below:



37.     Over the past ten years, JLG has earned more than $5.8 billion in revenue from the sale of scissor lifts and boom lifts in the United States featuring the orange and cream color scheme.

38.     By virtue of JLG's substantial advertising, promotion and sale of products bearing the orange and cream color scheme for more than 25 years, the

color scheme is associated by purchasers and end users with products made by JLG alone.  JLG has thus acquired valid and enforceable common law trademark rights in the color scheme for aerial work platforms (hereinafter, the "JLG Marks"), and JLG acquired such rights well before the acts of the Defendants complained of herein.

39.     In recognition of JLG's exclusive rights to use the JLG Marks in commerce in the United States, the United States Patent and Trademark Office ("USPTO") has issued JLG the following registrations for the marks:

| Mark | Reg. No. | Goods |
|---|---|---|
|  | 5,034,483 | Aerial work platforms |
|  | 5,034,481 | Aerial work platforms |

|  | 5,062,199 | Telehandlers |
|---|---|---|

40.   True and correct copies of the certificates of registration for the foregoing registrations are attached as Exhibit 11.

41.   The registrations identified above are valid and subsisting in law, were duly and legally issued, are *prima facie* evidence of the validity of the marks registered, and constitute constructive notice of the ownership of these marks by JLG in accordance with Sections 7(b) and 22 of the Trademark Act of 1946, 15 U.S.C. §§ 1057(b) and 1072.

42.   JLG is the sole owner of all right, title and interest in and to the JLG Marks, and the marks are assets of substantial value to JLG.

## **Defendants and Their Wrongful Conduct**

43.   LGMG China is a Chinese manufacturer of heavy equipment whose core business is, upon information and belief, the manufacture and sale of mining trucks.

44.     LGMG China has recently entered the aerial work platform market and is now manufacturing and selling lifts using an orange and cream color scheme that is identical or nearly identical to JLG's trademarked orange and cream color scheme (hereinafter the "Infringing Mark").  A true and correct image of an LGMG China lift (Model No. AS0607) taken from its website on January 18, 2019, is set forth below:



45.     True and correct printouts from LGMG China's website as it appeared on the same date showing the home page for LGMG China's aerial work platform business and product pages for its line-up of orange and cream colored aerial work platforms are attached as Exhibit 12.

46.     Upon information and belief, LGMG sells its lifts at materially lower prices than JLG.

47.    Late last year, LGMG China announced that it would be entering the United States market with its aerial work platforms for the first time in the first half of 2019.  (*See* Exhibit 13, which is a true and correct copy of a news article dated October 1, 2018, from the online edition of *Access International* magazine).

48.    Upon information and belief, in preparation for that move, LGMG China formed LGMG USA in November 2018 as a wholly-owned subsidiary to market, sell and service LGMG China's aerial work platforms in North America.

49.    LGMG USA's corporate address is a large warehouse in Chambersburg, Pennsylvania, that is a mere 20 miles from JLG's headquarters. Attached as Exhibit 14 is a true and correct image of the warehouse at LGMG USA's corporate address.

50.    Because LGMG China has not previously sold products in the United States, its name and products are not generally known to rental companies or end users in the United States.

51.    JLG has discovered from U.S. Customs records that LGMG China has recently begun to ship scissor lifts to the United States.

52.    In November and December 2018, Defendant NTB received 253 scissor lifts from LGMG China in six shipments, and, between June and December 2018, Alliance Rental LLC ("Alliance") of Dahlonega, Georgia, received 160

scissor lifts in five shipments from LGMG China.  (*See* true and correct copy of U.S. Customs import information obtained from Import Genius attached as Exhibit 15.)

53.     Social media posts by Alliance's owner, Rusty Kaylor, evidence that the lifts LGMG China is selling to the United States feature the Infringing Mark:



(*See* Exhibits 16 and 17, which include true and correct copies of posts by Kaylor on LinkedIn and Facebook.)

54.     Kaylor has intimate knowledge of JLG and the JLG Marks because he worked for a number of years for a JLG distributor.  Kaylor confirmed this intimate knowledge in a Facebook post on January 10, 2019 about JLG's founder that is copied below.



55.     NTB likewise has intimate knowledge of JLG because its President, Craig Paylor, worked for JLG for 28 years, including serving as JLG's President for four years from 2007 – 2011.  A true and correct image of Mr. Paylor giving a speech

on behalf of JLG at the 2004 World of Concrete trade show with an orange and cream JLG lift in the background is set forth below:



56.   LGMG China's sale of products bearing JLG's Mark to NTB and Alliance Rental, and NTB's importation of such products, is without JLG's consent and is an obvious attempt to trade on the notoriety and goodwill of the JLG Marks to gain a toehold in the U.S. aerial work platform market.

57.     In the past few days, LGMG China has altered the images of the aerial work platforms on the product pages of its website to change the colors from orange and cream to a single reddish-orange color. (*See* Exhibit 18). Kaylor has also posted an image to his Facebook feed of a scissor lift in this color. (*See* Exhibit 19). However, LGMG China also just recently shipped a substantial quantity of scissor lifts to Alliance Rental that are clearly orange and cream in color based on the photographs Kaylor has posted to his social media feed (see ¶ 54, *supra*).

58.     To the extent LGMG China intends to change the colors of its lifts to those shown on the newly edited product pages of its website, JLG would have no objection. However, it does not appear that is in fact LGMG China's intent because it is still showing a lift in orange and cream on the home page of the aerial work platform section of its website. (*See* Exhibit 20). It also seems unlikely that Alliance Rental or NTB intend to repaint the 413 scissor lifts they have collectively purchased to a new color scheme.

59.     Upon information and belief, neither NTB nor Alliance Rental have yet sold any of the lifts they have imported to any rental companies or end users in the United States. Nevertheless, sales of the products are likely to begin any day because LGMG China is exhibiting its products in the United States for the first time at the American Rental Association Show in Anaheim, California on February 17, 2019.

(*See* Exhibit 21).  Immediate relief from this Court is therefore necessary to ensure that LGMG China and its distributors neither promote nor sell any aerial work platforms in the United States in an orange and cream color scheme.

## COUNT I

### Federal Trademark and Service Mark Infringement Against LGMG China and NTB (15 U.S.C. § 1114(1))

60.     JLG incorporates by reference the allegations contained in paragraphs 1–59 of this Complaint as if fully set forth herein.

61.     Through more than 25 years of substantial and exclusive advertising, promotion, and sale of products under the JLG Marks in interstate commerce in the United States, the JLG Marks have acquired distinctiveness and serve in the minds of the relevant public to identify goods that are manufactured by, offered by, sponsored by, approved by, authorized by, associated with, or affiliated with JLG alone.  The JLG Marks acquired such distinctiveness well prior to the acts of Defendants complained of herein.

62.     JLG thus owns valid and enforceable trademark rights in the JLG Marks, and JLG has registered the marks with the USPTO.

63.     NTB's and LGMG China's importation and sale of aerial work platforms in and to the United States bearing the Infringing Mark is likely to cause confusion, mistake or deception among consumers as to whether the lifts at issue

originate from JLG and/or whether LGMG China, NTB, and/or their products are associated or affiliated with or sponsored, endorsed or authorized by, JLG, including, without limitation, through initial interest confusion and post-sale confusion.

64.     Accordingly, the actions of LGMG China and NTB infringe JLG's federally registered JLG Marks in violation of Section 32(1) of the Trademark Act of 1946, 15 U.S.C. § 1114(1).

65.     LGMG China's and NTB's adoption and/or use of a counterfeit or colorable imitation of the JLG Marks was willful and intended for the purpose of confusing the public and trading on JLG's reputation and goodwill.

66.     The conduct of these Defendants has caused and, if left unchecked, will continue to cause significant irreparable injury and damage to JLG for which no remedy at law exists.

67.     The conduct of LGMG China and NTB complained of herein will further enable them to earn profits to which they are not in law, equity or good conscience entitled.

68.     JLG is therefore entitled to appropriate relief against LGMG China and NTB as prayed for hereinafter, including temporary, preliminary, and permanent

injunctive relief, damages, enhanced damages, profits, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II

### Federal False Designation of Origin Against Defendants LGMG China and NTB (15 U.S.C. § 1125(a))

69.     JLG incorporates by reference the allegations contained in paragraphs 1–68 of this Complaint as if fully set forth herein.

70.     Defendants LGMG China and NTB have intentionally adopted and/or used the Infringing Mark without authorization or consent from JLG in connection with the importation and/or sale of aerial work platforms in commerce in the United States in an attempt to trade on JLG's reputation and goodwill as embodied in the JLG Marks.

71.     The actions of LGMG China and NTB are likely to cause confusion, mistake, or deception as to whether their products originate from, and/or whether the Defendants or their products are associated, affiliated or connected with or sponsored, endorsed or approved by, JLG, including, without limitation, through initial interest confusion and post-sale confusion.

72.     LGMG China and NTB have thus engaged in the use of false designations of origin in violation of Section 43(a)(1)(A) of the federal Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

73.    As a direct and proximate result of the Defendants' conduct in violation of Section 43(a)(1)(A), JLG has suffered and will continue to suffer actual and irreparable injury for which no adequate remedy exists at law.

74.    If left unchecked, the Defendants' conduct will enable them to earn profits to which they are not in law, equity, or good conscience entitled and will cause significant damage to JLG and the goodwill of its marks.

75.    JLG is therefore entitled to appropriate relief against LGMG China and NTB as prayed for hereinafter, including temporary, preliminary, and permanent injunctive relief, damages, enhanced damages, profits, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## **COUNT III**

### **Federal Declaratory Judgment of Infringement Against Defendant LGMG USA (28 U.S.C. § 2201)**

76.    JLG incorporates by reference the allegations contained in paragraphs 1-75 of this Complaint as if fully set forth herein.

77.    Although to JLG's knowledge LGMG USA has not yet engaged in any business activities, it was on information and belief formed to sell and service LGMG China's lifts bearing the Infringing Marks in the United States. Upon further information and belief, LGMG USA's commencement of business operations in the United States is imminent.

78.     Any distribution or sale of LGMG China lifts bearing the Infringing Mark in the United States by LGMG USA will infringe JLG's federally registered and common law rights in the JLG Marks under Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), for the reasons set forth in Counts I and II above.

79.     An actual, present, justiciable controversy therefore exists with regard to LGMG USA's planned conduct, and JLG requests a declaration that any sale or distribution by LGMG USA of aerial work platforms bearing the Infringing Marks will infringe JLG's rights in the JLG Marks in violation of Sections 32(1) and 43(a) of the Lanham Act.

80.     By way of relief on its claim, JLG seeks temporary, preliminary, and permanent injunctive relief prohibiting LGMG USA from engaging in the use of the Infringing Mark in any manner in the United States, including through the importation, sale, or service of any aerial work platforms bearing the Infringing Mark.

## COUNT IV

**Trademark Dilution Under the Georgia Trademark Dilution Statute
Against Defendant LGMG China (O.C.G.A. § 10-1-451(b))**

81.     JLG incorporates by reference the allegations contained in paragraphs 1-80 of this Complaint as if fully set forth herein.

82.     By virtue of more than 25 years of continuous and exclusive advertising, promotion and use of the JLG Marks in connection with the manufacture and sale of high quality aerial lift products in Georgia and elsewhere, the JLG Marks have acquired distinctiveness in Georgia and acquired such distinctiveness well-prior to the acts of LGMG China complained of herein.

83.     LGMG China's sale of aerial work platforms to Alliance in Georgia is likely to injure JLG's business reputation and dilute and/or tarnish the distinctiveness of the JLG Marks in violation of the Georgia Trademark Act, O.C.G.A. § 10-1-451(b).

84.     LGMG China's conduct in violation of the Act has caused JLG to suffer actual and irreparable injury for which no adequate remedy exists at law, and will continue to cause such injury unless and until enjoined by this Court.

85.     LGMG China's knowing and willful efforts to trade on JLG's reputation and dilute the JLG Marks entitles JLG to temporary, preliminary and permanent injunctive relief against Defendants.

## COUNT V

**Unfair Competition Under the Common Law of Pennsylvania
Against LGMG China and NTB**

86.     JLG incorporates by reference the allegations contained in paragraphs 1-85 of this Complaint as if fully set forth herein.

87.     Defendants LGMG China and NTB have intentionally adopted and used the Infringing Mark in Pennsylvania without authorization or consent from JLG in connection with the importation and sale of aerial work platforms in an attempt to trade on JLG's reputation and goodwill as embodied in the JLG Marks.

88.     The use by LGMG China and NTB of the Infringing Mark is likely to cause confusion, mistake, or deception as to whether LGMG China's products originate from, and/or whether these Defendants or their products are associated, affiliated or connected with, or are sponsored, endorsed or approved by, JLG.

89.     Defendants' conduct therefore constitutes unfair competition in violation of the common law of Pennsylvania.

90.     As a direct and proximate result of Defendants' conduct, JLG has suffered and will continue to suffer actual and irreparable injury for which no adequate remedy exists at law.

91.     The wrongful conduct of LGMG China and NTB will continue to cause such injury to JLG unless and until enjoined by this Court.

92.     JLG is therefore entitled to appropriate relief as prayed for hereinafter, including temporary, preliminary, and permanent injunctive relief, damages, punitive damages, profits, and costs.

## JURY DEMAND

JLG demands trial by jury of all issues raised herein that are properly tried to a jury.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of Defendants' unlawful conduct as alleged in Counts I through V above, JLG respectfully prays that:

1.     The Court enter judgment that JLG owns valid and enforceable rights in the JLG Marks, and that Defendants, as a direct and proximate result of their unlawful and unauthorized use of the Infringing Mark, have:

(a)     infringed JLG's rights in the JLG Marks in violation of Section 32(1) of the Federal Lanham Act, 15 U.S.C. § 1114(1);

(b)     engaged in unfair competition with JLG in violation of Section 43(a) of the Federal Lanham Act, 15 U.S.C. § 1125(a)(1)(A);

(c)     engaged in trademark dilution in violation of the Georgia Trademark Act, O.C.G.A. § 10-1-451(b); and

(d)     engaged in unfair competition with JLG in violation of the common law of Pennsylvania.

2.     The Court permanently enjoin Defendants and all those persons in concert or participation with them from:

(a)     using or authorizing others to use in any form or manner the Infringing Mark, any of the JLG Marks, any reproduction, counterfeit, copy or colorable imitations of any of the foregoing, and any mark that is confusingly similar to any of the JLG Marks;

(b)     passing off or inducing or enabling others to sell or pass off any goods or services which are not authorized by JLG as goods or services that originate from, are sponsored, endorsed or approved by, or are associated, affiliated or connected with, JLG;

(c)     otherwise unfairly competing with, injuring the business or reputation of, or damaging the goodwill of JLG and its JLG Marks in any manner; and

(d)     otherwise diluting or tarnishing the JLG Marks.

3.     Pursuant to Section 36 of the Trademark Act of 1946, 15 U.S.C. § 1118, the Court direct Defendants to deliver up to JLG for destruction all advertising and promotional materials, signs, business cards, apparel, and all other materials which

bear the Infringing Mark in any form, and all plates, molds, designs, matrices and other means of making or duplicating the same;

4.      The Court order Defendants to destroy or repaint within ten (10) days any aerial work platforms in the United States that bear the Infringing Mark to a color scheme that does not include an orange and cream color combination in any shade and is not otherwise confusingly similar to the JLG Marks;

5.      Pursuant to Section 35 of the Trademark Act of 1946, 15 U.S.C. § 1117, the Court require Defendants LGMG China and NTB to pay JLG the actual damages it has suffered as a result of their conduct, with such damages to be trebled as authorized by this Section;

6.      The Court order that an accounting be had and that LGMG China and NTB be required to disgorge to JLG any profits these Defendants have earned as a result of their unlawful use of the Infringing Mark;

7.      In lieu of actual damages and profits on its claim under Section 32(1) of the Lanham Act, LGMG China and NTB be ordered to pay JLG statutory damages in the amount of $2 million pursuant to 15 U.S.C. § 1117(c) as a result of their knowing and willful counterfeiting of the JLG Marks;

8.      Pursuant to Section 35 of the Trademark Act of 1946, 15 U.S.C. § 1117, the Court require Defendants to pay JLG both the costs of this action and the reasonable attorneys' fees it incurs in connection with the action;

9.      LGMG China and NTB be ordered to pay punitive damages to JLG pursuant to Pennsylvania common law; and

10.     The Court grant JLG such other, further and additional relief as the Court deems just and proper.

Dated:  February 1, 2019

/s/ Bridget E. Montgomery
Bridget E. Montgomery, Esquire (PA 56105)
Eckert Seamans Cherin & Mellott, LLC
213 Market Street – 8th Floor
Harrisburg, PA  17101
Tel:    (717) 237-6054
Fax:   (717) 237-6019
Email: bmontgomery@eckertseamans.com

*Attorneys for Plaintiff, JLG Industries, Inc.*

## **VERIFICATION**

I, Jeffrey D. Ford, declare as follows:

1.     I am the Director of Global Strategy and Business Development of JLG Industries, Inc. ("JLG").

2.     I verify under penalty of perjury of the laws of the United States of America that the factual allegations of the Verified Complaint are true and correct to the best of my knowledge, information, and belief based on my personal knowledge and review of the business records of and information available to JLG.

Executed on February 1, 2019.

JEFFREY D. FORD